In the Matter of INVESTORS FUNDING CORPORATION OF NEW YORK et al., Debtors.

Nos. 74 B 1454, 74 B 1455, 74 B 1511–74 B 1542.

United States District Court, S. D. New York.

Nov. 8, 1976.

Weil, Gotshal & Manges, New York City, for Trustee; Alan B. Miller, Prudence B. Abrams, New York City, of counsel.

Levin & Weintraub, New York City, for Debtors; Michael J. Crames, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Chase Manhattan Bank, N. A.; Arthur C. Kirkland, Jr., John J. Jerome, David C. L. Frauman, New York City, of counsel.

Carter, Ledyard & Milburn, New York City, for U. S. Trust Co.; James W. Rayhill, New York City, of counsel.

Marvin E. Jacob, Don L. Horwitz, for Securities and Exchange Commission.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for IFC Debentureholders Protective Committee; Gary M. Ferman, Robert J. Haft, New York City, of counsel.

Polan & Mickenberg, New York City, for debenture holders; Murray J. Mickenberg, New York City, of counsel.

**464**

Anderson, Russell, Kill & Olick, P. C., New York City, Green, Lasky & Cohen, Newark, N. J., Friedman & Koven, Chicago, Ill., Saiber, Schlesinger & Satz and Sills, Beck, Cummis, Radin & Tischman, Newark, N. J., Special Counsel for Trustee; John H. Gross, Eugene R. Anderson, New York City, Martin J. Cohen, Newark, N. J., Martin M. Ruken, Chicago, Ill., David M. Satz, Jr., and Morton S. Bunis, Newark, N. J., of counsel.

Cole & Deitz, New York City, for Nat. Bank of North America; Anthony J. D'Auria, Robert J. Rosenberg, New York City, of counsel.

Zalkin, Rodin & Goodman, New York City, for Citibank, N. A. and Chemical Bank; James D. Glass, Richard S. Toder, Henry L. Goodman, New York City, of counsel.

OPINION

BONSAL, District Judge.

*General Background*

Pursuant to Section 247 of the Bankruptcy Act (11 U.S.C. § 647) and Chapter X Rule 10–216 thereunder, a hearing was held before this Court on June 28, 1976 for the purpose of considering applications for interim and final allowances for services rendered to the various debtor corporations by the Trustee, general and special counsel for the Trustee, and the accountants for the Trustee since the start of the Chapter X proceedings in October 1974 through the end of February 1976. Written objections to interim allowances sought by Weil, Gotshal & Manges, general counsel for the Trustee; Anderson Russell Kill & Olick, Special Counsel for the Trustee; and Coopers & Lybrand, accountants for the Trustee, were filed by the Chase Manhattan Bank, N.A., Chemical Bank, as successor to Security National Bank, the National Bank of North America and Citibank, N.A., ("the Banks") as creditors in these proceedings. In addition, the Court received over seventy letters from debenture-holders, shareholders, and general creditors of Investors Funding Corporation in opposition to the applications for allowances. Oral objections

to the applications were also made by investors in IFC securities.

The Court granted a request by the Securities and Exchange Commission (hereinafter "SEC") to file its recommendations with respect to the allowances on or before July 20, 1976. In addition, the Banks were given to July 20, 1976 to file memoranda of law in support of their formal objections. The applicants were given until August 9, 1976 to file reply papers and a further hearing was scheduled for August 16, 1976.

On July 6, 1976, the Court entered an order granting 50% of the interim allowances sought by the Trustee; Weil, Gotshal & Manges; Anderson Russell Kill & Olick; and Coopers & Lybrand, without prejudice to the award of further interim and/or final allowances, on the grounds that "[t]hese applicants are presently devoting very substantial amounts of time in rendering services to the Estate" and "[t]he Trustee has filed an affidavit stating that such payments may be made at this time without undue financial burden on the Estate."

At the hearing on August 16, 1976, the SEC presented its position on the applications for interim allowances and comments were solicited from the individual investors who were in attendance. A third hearing was held on August 30, 1976 for the purpose of concluding the oral argument in favor of and in opposition to the several applications for allowances.

*Applicable Legal Principles*

While allowance awards in a Chapter X proceeding generally await the consummation of the proceedings so that the results of the rehabilitation can be evaluated and the contribution of each party measured with the appropriate distribution of funds available, *see* 6A *Collier on Bankruptcy* ¶ 13.16 at 1009 (14th ed. 1972); *In re Keystone Realty Holding Co.,* 117 F.2d 1003 (3d Cir.1941), interim allowances, under proper circumstances, may be granted to officers of the debtor's estate, including the trustee and his counsel, so that ". . . the administration of the debtor's estate may be carried on." 6A *Collier on Bank-*

*ruptcy, supra; see also, In re Keystone Realty Holding Co., supra; Matter of Paramount Publix Corp.,* 12 F.Supp. 16 (S.D.N.Y.1934). Indeed, this Court has noted on several occasions that these interim allowances are necessary to sustain those who have been working on this matter for the past sixteen months and who have been advancing their services to the estate without compensation. However, the interim allowances are designed only "to keep body and soul together", to provide necessary payments so that the services needed by the debtor estate can be continued.

■ In reviewing the various applications for allowances, the Court recognizes that the SEC's recommendations are entitled to great weight since it is a disinterested government agency skilled and experienced in reorganization affairs. *Surface Transit, Inc. v. Saxe, Bacon & O'Shea,* 266 F.2d 862 (2d Cir.1959); *Finn v. Childs,* 181 F.2d 431 (2d Cir.1950); *see also, Securities Investor Protection Corp. v. Charisma Securities Corporation,* 506 F.2d 1191 (2d Cir. 1974). The Court has proceeded on the basis that any awards granted be reasonable in the context of the value of the debtor's estate, the amount available for allowances, and the ability of the debtor to pay. 6A *Collier on Bankruptcy* ¶ 13.02 at 910 (14th ed.1972). In connection therewith, the Court has considered the papers filed in support of the application as well as the papers and letters filed in opposition, and has relied on the Trustee's affidavit dated July 5, 1976 in which he states that allowances sought at this time may be granted without undue burden to the financial condition of the Estate.

### Interim Allowances
*Application by the Reorganization Trustee*

James Bloor, the Reorganization Trustee, was appointed to his position by the Court on November 1, 1974 and has performed his duties as Trustee on a full-time basis since on or about November 15, 1974. The Trustee, in his application, submits that his duties have required him to put in a full nine-hour day, five days a week and that on many occasions he has been required to spend additional hours in the evening and on Saturdays and Sundays. According to his records, the Trustee submits that he has devoted in excess of 2700 hours to his duties since his appointment on November 1, 1974 through February 29, 1976. For the services rendered during this period, the Trustee seeks an interim allowance in the amount of $133,333.00.

The SEC, in its recommendations, contends that the Trustee's request in equivalent to the rate of $100,000 per year but that his allowances in the future, under the simplified fee request procedure, will be limited to $75,000 per year. The SEC contends that in interim allowance at the rate of $75,000 per year is sufficient to alleviate any economic hardships incurred by the Trustee and, accordingly, recommends that the Trustee's request be reduced to $100,000 for the sixteen-month period in question. The SEC also contends that any amount in excess of $100,000 would be inconsistent with the principle of economy of administration in a Chapter X proceeding, particularly since it appears that reorganization in this case will be frustrated and it is impossible, at this time, to assess the impact of these proceedings on the public and private interests.

■ The Court is aware that the Trustee has devoted his full attention to the daily operations of Investors Funding Corporation and that he has performed his duties as Trustee over the first sixteen months of these proceedings without compensation. There is no dispute that the Trustee's services are essential to the Estate and that he has ably performed his duties as Trustee. While the Trustee's request for $133,333.00 may well be merited for the time and effort expended, interim allowances in a Chapter X proceeding are designed solely for the purpose of sustaining essential services to the Estate without profit to the recipient. Consequently, the Court will allow an interim allowance of $100,000.00, inclusive of the $66,666.50 previously awarded on July 6, 1976, on account of the services rendered by the Trustee from the time of his appoint-

ment on November 1, 1974 through February 29, 1976, without prejudice to the Trustee's right to assert his claim for additional compensation for this period in his final application for allowances.

### Application of Weil, Gotshal & Manges, General Counsel for the Trustee

Weil, Gotshal & Manges and its counsel, the late Professor Charles Seligson,[1] were employed by James Bloor, as Reorganization Trustee, as his attorneys pursuant to an order of this Court dated November 20, 1974. An application for interim allowances in the amount of $503,800.00 is made for services rendered by the members and associates of Weil, Gotshal & Manges and Professor Seligson during the period from November 14, 1974, the actual date of retention by the Trustee, through and including February 29, 1976. In addition, applicant seeks reimbursement of actual and necessary costs and expenses in the amount of $32,105.16.

Objections to this application have been filed by the Chase Manhattan Bank, N.A. and the other banks parties to the 1973 Credit Agreement on the grounds that no compensation should be awarded until the Section 167 Report and the plan for reorganization are filed.[2] The Court has also received numerous letters from individual investors in IFC securities opposing the application.

Applicant has described in detail the services rendered for the Trustee and Debtor Estate, and states that an aggregate of 9,646 hours was expended for these services over a 15½ month period. Approximately 2,510 hours or 27% of that time was expended by partners of the firm; 6,878 hours or 71% of the time was expended by associates; and 258 hours or 2% of the time was expended by paraprofessionals or summer students. The aggregate number of hours

was then multiplied by a mixed hourly rate of $52.23 to arrive at the requested amount of $503,800.00.

Applicant contends, through the affidavit of Jesse D. Wolff dated August 6, 1976, that the cost of the services provided to the Trustee, at the firm's normal hourly rates, would approximate $671,745.00 and that the actual cost of doing business, or overhead, amounts to 62.9% of each dollar of income realized. Applying this overhead figure to the aggregate amount of time charges accrued in the representation of the Trustee, applicant contends that the actual cost to the firm (exclusive of any compensation to the partners and out-of-pocket disbursements of the firm) would equal $422,527.00. This figure, according to the affidavit of Jesse D. Wolff, covers the salaries for associates, stenographic and clerical personnel, rent, utilities and other similar items of overhead, but does not provide for profit to the firm's partners or the estate of the late Professor Charles Seligson.

The SEC notes that Trustee's special counsel, Anderson Russell Kill & Olick, is requesting an interim allowance at the mixed hourly rate of $37.38 which approximates the overhead costs to that firm. In view of the foregoing, and considering that most of the time charges submitted by Weil, Gotshal & Manges represents time of associates and paraprofessionals, the SEC recommends an interim allowance not to exceed $360,000, which is the equivalent of a mixed hourly rate of $37.32. The SEC also recommends that applicant's request for reimbursement of expenses be reduced by $6,817.00 to $25,288.16 to reflect a reduced charge in the per page rate for copying.

The Court recognizes the legal complexities involved in a reorganization proceeding of this magnitude and the important services provided to this Estate by the appli-

---

1. The late Charles Seligson died on September 10, 1975. The application includes a request for the allowance of interim compensation for services rendered by Professor Seligson during the period from November 14, 1974 to on or about September 1, 1975.

2. The Banks have previously reserved their right to object to the partial interim allowances awarded on July 6, 1976. The current objections are directed solely to the balance of allowances sought by the several applicants.

cant. While many of the services were ministerial and routine, the attorneys were faced with a complex and difficult situation calling for a high degree of legal experience and skill, which they have demonstrated.

■ Moreover, the Court is of the opinion that awards for interim allowances in this case should not be delayed until the filing of the Section 167 Report. The Court, however, is of the firm opinion that interim allowances should cover only the overhead costs of doing business and that any interim allowances should not include any amount of profit. While the cost of doing business may vary from firm to firm, the Court finds that the figure of $422,527.00 appears to be a proper measure of the overhead costs without profit. Accordingly, the Court grants applicant an interim allowance in the amount of $422,527.00, inclusive of the $251,900.00 awarded on July 6, 1976, without prejudice to consideration of additional requests at a later time.

■ As to the request for reimbursement of expenses, applicant has submitted a charge of $17,042.50 for copying, which is the equivalent to a rate of $.10 per copy. As the SEC recommends, copying costs should conform to the average cost of in-house copying by large New York City law firms which, according to the SEC, is equivalent to $.06 per copy. Therefore, the request for reimbursement of disbursements will be reduced to $25,288.16.

*Application by Anderson Russell Kill & Olick, P. C., Special Counsel for the Trustee*

■ The law firm of Anderson Russell Kill & Olick was retained by the Trustee on May 21, 1975 to represent him in the investigations conducted under Sections 167(2) and (3) of the Bankruptcy Act; in the defense of certain actions commenced against IFC prior to these bankruptcy proceedings; and in the litigation of issues raised by the loan of money to IFC by the consortium of banks. On October 21, 1976, applicant, on behalf of the Trustee, instituted an action in the United States District Court for the Southern District of New York against certain of IFC's former officers and other defendants. Applicant requests an interim allowance in the amount of $147,156.00 for professional services rendered from May 21, 1975 through February 29, 1976. The firm also seeks reimbursement of costs and expenses in the amount of $5,683.95.

Applicant states that it arrived at the interim allowance figure by taking the total number of hours expended by attorneys on services for the Trustee, 3,070.20, and multiplying that by an hourly rate of $37.38 which approximates the general overhead costs to the firm as well as the basic monthly compensation received by each attorney. A similar procedure was followed in determining the value of the 2,318.68 hours expended by non-lawyers at an hourly rate of $13.97. Together, the overhead costs to the firm for the hours expended on services for the Trustee total $147,156.00.

The Banks filed objections to the amounts requested on the same ground as asserted against the application of Weil, Gotshal & Manges, and on the additional ground that the Banks should be entitled to review the firm's time records which have only been made available for review by the Court and the SEC.[3]

The SEC has recommended that the application be granted in full for the reasons that the firm is providing substantial services to the Trustee and Estate on a daily basis and that the total amount of compensation sought is reasonable in relation to the number of hours expended thus far.

The Court, in its review of the application, finds that the amount requested reflects overhead costs and is therefore appropriate in an application for interim allowances. Moreover, the Court is of the opinion that an award at this time will enhance

---

**3.** At the October 18, 1976 hearing on applications in the *Matter of Investors Funding Corp.*, Mr. Eugene Anderson, of the firm of Anderson Russell Kill & Olick, represented to the Court that his firm's time records would be made available for inspection by all interested parties.

rather than delay the preparation and filing of the critical Section 167 Report. Accordingly, the Court grants the application for an interim allowance in the amount of $147,156.00 for services rendered, inclusive of the $73,578.00 awarded on July 6, 1976, and for reimbursement of costs and expenses in the amount of $5,683.95.

### Interim Allowances for Special Counsel

### Application of Friedman & Koven, Esqs. (Chicago, Illinois)

### Application of Meyer, Weiss, Rose, Arkin, Sheppard & Shockett, P.A. (Miami Beach, Florida)

■ The law firm of Friedman & Koven requests an interim allowance of $13,105.00 and reimbursements in the amount of $562.33 for services performed for the Trustee arising out of a default by the lessee of real estate owned by one of the debtors in Cook County, Illinois. The matter is currently pending in the Circuit Court of Cook County Illinois, County Department, Chancery Division.

The law firm of Meyer, Weiss, Rose, Arkin, Sheppard & Shockett also seeks an interim allowance in the amount of $3,700.00 and reimbursement for expenses in the amount of $162.89 for services rendered in the eviction of a lessee of an apartment complex owned by one of the debtor corporations in Broward County, Florida.

The SEC recommends that these interim allowances be denied at this time since the services required are of a limited nature, and there is no showing of economic hardship.

As previously stated, interim allowances should be granted only where the applicant will suffer severe hardships if he has to await a final allowance. This had not been demonstrated in these applications. Accordingly, the applications of Friedman & Koven and Meyer, Weiss, Rose, Arkin, Sheppard & Shockett for interim allowances will be denied at this time without prejudice to their renewal as final allowances upon completion of the services undertaken for the benefit of the Estate.

### Final Allowances for Special Counsel

### Application of Green, Lasky & Cohen, Esqs. (Newark, New Jersey)

■ The law firm of Green, Lasky & Cohen represented the Trustee in four separate litigations which have now been concluded resulting in a net recovery to the Estate of $6,176.00. The firm now seeks a final allowance in the sum of $1,700.00 for 26.25 hours of work and reimbursement for expenses in the amount of $33.80.

With regard to final allowances for special counsel for the Trustee, the SEC takes the position that it will not oppose the payment of insubstantial final awards to special counsel, particularly where a hardship may be worked if counsel were required to wait until the conclusion of the Chapter X proceedings.

Here, the Court finds that these services have conferred a benefit to the Estate in the amount of $6,176.00. Moreover, the amounts requested for a final allowance and reimbursement of expenses appear to be reasonable in relation to the number of hours expended. Accordingly, the Court grants the application for a final allowance of $1,700.00 and reimbursement of expenses in the amount of $33.80.

### Application of Piper & Marbury (Baltimore, Maryland)

■ Piper & Marbury was retained to defend the Trustee in Maryland in an action seeking compensatory and punitive damages for the wrongful death of Barbara Blum and to prosecute claims against several insurance carriers which had issued policies to IFC. The lawsuit in Maryland resulted in a jury verdict against IFC in the amount of $2,355,000 for compensatory damages and $11,000,000 for punitive damages. Applicant was able to settle the matter so that punitive damages were dropped, the insurance carriers paid the limits of the policy, and no liability resulted to the Estate. Applicant now seeks a final allowance of $5,691.25 for 129.8 hours of service and reimbursement for expenses in the amount of $345.67.

The Court finds that the final allowance sought is reasonable. In addition, the Court notes that the SEC recommends that the amount requested be granted in full. Accordingly, the Court awards a final allowance in the amount of $5,691.25 for services rendered and reimbursement of expenses in the amount of $345.67.

*Application of Siber, Schlesinger & Satz, Esqs.* (Newark, New Jersey)

■ The law firm of Siber, Schlesinger & Satz was retained by the Trustee to represent him in criminal proceedings in the United States District Court for the District of New Jersey entitled *United States v. Dansker, et al.* Counsel now seeks a final allowance of $7,440.00 and reimbursements of $222.68 for expenses incurred.

The SEC submits that the final allowance should not exceed $4,500.00. Moreover, the SEC contends that the request for a final allowance is being made in the middle of the Chapter X proceedings when the financial condition of the Estate is unknown, and a full evaluation of the services rendered is difficult to ascertain.

The Court, while taking note of the views of the SEC, finds that Mr. Satz was impressed into lengthy service at the New Jersey criminal trial in spite of an order of this Court to represent the Trustee and IFC only as witnesses, and that he received no compensation from the New Jersey court for his services. Moreover, the Court is of the opinion that Mr. Satz should not be prejudiced in seeking a final award for his services which have been completed.

Under the circumstances, however, the Court believes that the rate of $100 per hour is too high, even though the time was substantially expended in litigation. Accordingly, the Court grants the application for a final allowance in the amount of $5,500.00 and reimbursement of expenses in the amount of $222.68.

*Application of Sills, Beck, Cummis, Radin & Tischman, P.A.* (Newark, New Jersey)

The Trustee retained the firm of Sills, Beck, Cummis, Radin & Tischman in two actions commenced in Bergen County, New Jersey; in an action to enforce security interests on leases and real estate; and to represent the Trustee in a mortgage modification. Applicant requests both final and interim allowances in the amount of $15,865.78 and reimbursement of expenses in the amount of $269.25.

The SEC recommends that the award for final allowances not exceed $11,000.00 and that the request for an interim allowance of $1,730.65 be denied at this time without prejudice to its renewal upon the completion of services for the Trustee.

■ The Court finds that counsel spent a total of 206 hours in performing services for the Trustee for which final compensation is now sought. Of this total amount of time, approximately 86.5 hours, or 42%, was expended by associates. Thus, under the figure recommended by the SEC, counsel would be compensated at a mixed hourly rate of $53.00. The Court finds this amount of compensation to be reasonable for the services rendered and accordingly grants the application of Sills, Beck, Cummis, Radin & Tischman for a final allowance in the amount of $11,000.00, and reimbursement of expenses in the amount of $269.25. The request for an interim allowance in the amount of $1,730.65 is denied without prejudice to its renewal upon completion of the services requested.

*The Accountants*

*Application of Coopers & Lybrand, Accountants for the Trustee*

■ Coopers & Lybrand request a final allowance in the amount of $449,870.00 for services rendered during the fourteen-month period from January 1, 1975 through February 29, 1976, and reimbursement of expenses in the amount of $6,069.22. The request is based on 17,673.5 hours of work at the hourly rates heretofore approved by the Court in Orders numbered 34 and 150. While applicant requests a final allowance for the period from January 1, 1975 through February 29, 1976, they continue to be the accountants for the Trustee and, as such,

will be granted only an interim allowance at this time.

Objections to the amounts requested were filed by the Banks on the ground that a proper evaluation of the services rendered is not possible until the Section 167 Report is completed and filed. Furthermore, the SEC takes the position that it would be appropriate to defer payment of a portion of the allowance requested until after the Section 167 Report is filed and an evaluation is made of the services rendered to the Estate, and therefore recommends an interim allowance in the amount of $330,000.00.

■ The Court is aware of the large amount of work performed by Coopers & Lybrand in the preparation of financial reports and other matters for the Section 167 Report. However, the Court is also of the opinion that substantial fee requests should be deferred until there is time to evaluate properly the financial condition of the Estate and any future course of action. Accordingly, the application of Coopers & Lybrand will be granted to the extent of an interim allowance in the amount of $330,-000.00 inclusive of the $224,935.00 awarded on July 6, 1976, without prejudice to requests for additional allowances at a later time. The request for reimbursement of expenses in the amount of $6,069.22 is granted.

*Application of S. D. Leidesdorf & Co., Accountants for the Debtor retained by the Chapter X Court for a Specific Purpose*

S. D. Leidesdorf & Co., the prior accountant to the Debtor, was retained by the Court at the outset of the Chapter X proceedings to prepare a list of all the assets and liabilities of IFC as of September 30, 1974, one month prior to the filing of the Chapter X petitions. For the services rendered, applicant seeks a final allowance of $61,927.50 and reimbursement of expenses in the amount of $3,042.56.

The SEC contends that under Rule 215 of the Rules of Bankruptcy Procedure, applicant must seek an additional retention order to receive an allowance in excess of the maximum amount presently authorized by Order # 6 dated October 29, 1974. Accordingly, the SEC recommends that a final allowance of $35,000.00 be granted at this time and that consideration of any additional requests for allowances be deferred until later in the proceedings. The SEC also recommends that the request for reimbursement of expenses be reduced to $1,095.76 to eliminate certain items of normal overhead and excess charges for copying.

■ Rule 215 of the Rules of Bankruptcy Procedure is made applicable to Chapter X proceedings by Rule 10–206 of the Chapter X rules and, under these statutory provisions, the maximum amount of compensation that can be awarded at this time may not exceed the amount fixed by the retention order. Accordingly, the Court grants the application of S. D. Leidesdorf for an allowance in the amount of $35,000.00 and reimbursements of disbursements in the amount of $1,095.76 without prejudice to a later application.

The applications for interim and final allowances, as hereinabove modified, are granted to the extent set forth in the following table:

IN THE MATTER OF INVESTORS FUNDING CORPORATION OF NEW YORK

Applications for Interim and/or Final Allowances