**In the Matter of INVESTORS FUNDING CORPORATION OF NEW YORK et al., Debtors.**

**UNION BANK, Appellant,**

v.

**James BLOOR, as Trustee in Reorganization of IFC Collateral Corporation and IFC Serramonte Estates Corporation, Debtors, and Damavandi Enterprises, Inc., Appellees.**

No. 90, Docket No. 78–5012.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1978.

Decided Feb. 8, 1979.

Richard S. Toder, New York City (Richard A. Gerard, Zalkin, Rodin & Goodman, New York City, of counsel), for appellee Union Bank.

Alan B. Miller, New York City (Lawrence Mittman, Weil, Gotshall & Manges, New

York City, of counsel), for appellee Reorganization Trustee.

Fred K. Howell, Jr., Berkeley, Cal., for appellee Damavandi.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and MISHLER, District Judge.[*]

PER CURIAM:

This case arises from a Chapter X reorganization proceeding in the United States District Court for the Southern District of New York, Dudley B. Bonsal, *Judge.* It involves Investors Funding Corporation of New York ("IFC") and thirty-three other debtor corporations, including IFC Collateral Corporation ("Collateral") and IFC Serramonte Estates Corporation ("Serramonte"). Union Bank appeals from an order of Judge Bonsal which authorizes appellee James Bloor, the Reorganization Trustee of all the debtors including Serramonte, to perform a contract of sale for a parcel of Serramonte's real property free of encumbrances (including Union Bank's mortgage lien and an $880,000 deed of trust held by Collateral), such encumbrances to attach to the proceeds of the sale. The other party to the contract is appellee Damavandi Enterprises, Inc. The bank argues that the order deprived the bank of its right, in the absence of a reorganization plan, to foreclose on its collateral within a reasonable period of time.

The bank contends that the contract authorized by the order is not a sale of the property, which is located adjacent to a freeway on the San Francisco Bay Peninsula, but in reality a one-year option to purchase it, since the purchase authorization is contingent upon approval of a subdivision or rezoning plan by the Daly City, California city council. Because three years had already elapsed between the filing of Chapter X proceedings and the issuance of the sale authorization order, and because there is no assurance that the sale will be con-summated, the bank argues that it should be allowed to foreclose without any further delay.

The court in a Chapter X proceeding may approve the sale of property in its discretion, 11 U.S.C. § 516(3); *see Frank v. Drinc-O-Matic,* 136 F.2d 906 (2d Cir. 1943) (per curiam). Generally, a sale free of encumbrances is disfavored if the aggregate of the encumbrances is greater than the proceeds of the sale but favored if the estate has an equity in the property and the sale is in the best interests of the estate. *In re Miller,* 95 F.2d 441, 442–43 (7th Cir. 1938); 4B *Collier on Bankruptcy* ¶ 70.97, at 1139–41 (14th ed. 1978). Although no findings appear in the order, it is evident from comments by Judge Bonsal recorded in the transcript of the hearing on the merits of the sale [1] that Judge Bonsal found that the estate did have an equity in the property and that the sale was in the best interests of all concerned. The bank challenges both findings.

We note at this point that detailed, written findings of fact supporting the court's use of discretion in allowing a sale of property of the debtor greatly facilitate appellate review. We urge district judges, and the bankruptcy judges who will be adjudicating such issues under the new Bankruptcy Reform Act, to make such findings. In this case, in the absence of such findings, we must search the record to see if there exists sufficient evidence to support the general factual conclusions that the district court must have reached in order not to have abused its discretion in approving the sale contract.

A preliminary question is whether, for the purpose of evaluating the estate's equity, the land should be valued only at its fair market value without subdivision plan approval, stipulated by the parties as $1,000,000 as of July 5, 1977, or at its expected sale price of $1,440,000, or at an intermediate

---

[*] Of the Eastern District of New York, sitting by designation.

1. Transcript of hearing before Judge Bonsal held on January 4, 1978, Appendix on Appeal 267, *In re Investors Funding Corp. of New York,* 422 F.Supp. 461 (S.D.N.Y.1974).

figure. We do not accept the proposition that the land must be valued at the lower amount. Although there is a paucity of case law dealing with valuation of land in bankruptcy proceedings, we find support for our conclusion in related areas of the law.

We first look for guidance in the field of valuation in condemnation proceedings. In this circuit, the applicable law was stated in *United States v. Meadow Brook Club,* 259 F.2d 41, 44–45 (2d Cir.), *cert. denied,* 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958):

> Just compensation compatible with the requirements of the Fifth Amendment is the fair market value of the condemned property just prior to the taking. . . This evaluation should reflect not only the purpose for which the property has theretofore been used, but other uses which might render it more profitable. . . . It would be improper to value the property as if it were actually being used for the more valuable purpose. . . Obviously the more profitable operation must be one allowed by law to be carried out on the premises. Thus if existing zoning restrictions preclude a more profitable use, ordinarily such use should not be considered in the evaluation. . . . *On the other hand if there is a reasonable possibility that the zoning classification will be changed, this possibility should be considered in arriving at the proper value.*

(Emphasis added; citations omitted.)

Several other circuits have expressly endorsed this reasoning. For example, in *Wolff v. Puerto Rico,* 341 F.2d 945 (1st Cir. 1965), the court stated:

> The highest and best possible use of property is not confined to the use at the time of taking. Neither is it confined by the zoning at the time of the taking, if there is a reasonable possibility that there may be a re-zoning. . . . "When 'there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, *such likelihood may be considered* if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative.' Nichols on Eminent Domain, 3rd ed., Vol. 4, sect. 12.322, pages 238–243."

341 F.2d at 946–47 (footnote omitted) (emphasis added) (quoting with approval from state's brief). In *Wolff* the court reversed the district court's finding on the valuation of a plot of condemned land on the ground that certain items of evidence relating to a possible zoning change and its effect on the property's value had been held inadmissible. Among these items was evidence showing "that prior to the condemnation the [land] had been contracted to be sold at a high price, conditioned upon obtaining a new classification." 341 F.2d at 947. *See also Reservation Eleven Associates v. District of Columbia,* 136 U.S.App.D.C. 311, 420 F.2d 153 (1969); *United States v. 1,291.83 Acres of Land,* 411 F.2d 1081 (6th Cir. 1969); *United States v. Benning,* 330 F.2d 527 (9th Cir. 1964).

These cases make clear that the possibility of a zoning change and the probable value of property after the zoning change must be "considered" when appraising the value of the property prior to the change. Critically, however, "the property must not be evaluated as though the rezoning were already an accomplished fact. It must be evaluated under the restrictions of the existing zoning [with] consideration given to the impact upon market value of the likelihood of a change in zoning." 4 *Nichols on Eminent Domain* ¶ 12.322[1], at 12–657 (3d ed. 1977).

The bankruptcy law itself in a general way supports the teaching of the condemnation cases. In the context of conducting a "fair valuation" of property to determine whether a business is insolvent, one must "estimate . . . what can be realized out of the assets *within a reasonable time* either through collection or sale at the regular market value." 1 *Collier on Bankruptcy* ¶ 1.19[4], at 123–24 (14th ed. 1974) (em-

phasis added). *See also id*. at 128–30 (valuation of real estate).

We conclude that these principles should also apply to the valuation of property for the purpose of determining whether a debtor's estate has an equity in property that is to be sold free of encumbrances in a Chapter X proceeding. In such a case, it is unrealistic either to ignore entirely the possibility of a zoning change or to assume that the change will occur. Here, although the contract price should not have been equated with the fair market value, the difference between the two was probably slight in view of the reasonable likelihood of a zoning change. Thus, the property may reasonably be evaluated at a figure closer to the contract price than to the fair market value absent subdivision plan approval.

■ A finding that the estate has an equity in the property would thus plainly not be clearly erroneous. The bank concedes that the sum of the bank's lien and the outstanding taxes is less than $800,000. Following the principles above set forth, the value of the property is somewhere between the sale price of $1,440,000 and the $1,000,000 fair market value of the land without subdivision plan approval as stipulated by the parties. On this basis the estate has a substantial equity in the property. The bank notes that there are outstanding mechanics' liens which with interest may total almost $700,000. The bank, however, has not disputed the trustee's argument that,

according to California law, the deed of trust to the property held by Collateral is superior to the mechanics' liens. The trustee also argues that the $880,000 deed of trust held by Collateral is superior to the bank's lien, but even if it is not it still gives the trustee a substantial equity in the property.[2]

■ A finding that the contract is in the best interests of the estate would also not be clearly erroneous. Any realistic valuation of the property is closer to the sale price than to the fair market value of the land. There is good reason to believe that the sale will be completed: Daly City had already approved a plan with greater density housing than the sale contract contemplated; there are further indications that Daly City will approve the subdivision plan; and Damavandi Corporation is obligated under the contract to accept the property if the plan is approved.[3] A year's delay in realization of money from the property would not unduly burden the appellant bank: the bank is in no danger of losing its interest, and it will suffer no great financial strain from a deferred payment.

■ The bank finally argues that it should be allowed to foreclose immediately regardless of the interests of the estate or the other creditors. It relies exclusively on *Lincoln-Alliance Bank & Trust Co. v. Dye*, 115 F.2d 234 (2d Cir. 1940) (per curiam), which reversed a district court order continuing a stay against a mortgagee's foreclo-

---

**2.** At a preliminary hearing there was evidence from which the court could have found that the trustee had been soliciting offers for the property for over a year; at least four offers to purchase had been made, each of which was conditioned upon the offeror's receiving "subdivision approval" from the local planning board; the Daly City Planning Board might look favorably upon the construction of a substantial project on the property, particularly in light of the board's prior approval for a previous owner of a higher density subdivision; the principal amount of the bank's claim was approximately $460,000; and the bank, in a law suit in California, had asserted title to a $250,000 deposit which might serve to offset and reduce *pro tanto* the amount claimed by the bank. Moreover, the mechanics' liens, the priority of which

is now being litigated in state courts, appear to be somewhat duplicative or overstated.

**3.** The bank's contention that the contract for sale to Damavandi Corp. is an option is incorrect. The contract is a conditional contract. Although the satisfaction of the condition, plan approval by Daly City, is dependent upon Damavandi's acting vigorously to secure that approval, Damavandi is obligated under the contract to make a good faith effort to secure it. In doing so it obviously will spend, and perhaps has already spent, considerable sums in preparing the application to Daly City. Because Damavandi must seek plan approval and must purchase the land if it obtains approval, it lacks the contractual freedom characteristic of an option.

**138**

sure on a ship, finding that the trustee could not justify any further delay. *Lincoln-Alliance,* however, arose from a situation quite different from the one underlying the case at hand. The ship involved in *Lincoln-Alliance* was substantially the entire corpus of the estate and its value was roughly equal to the sum owing on the mortgage. There was thus no justification for a fourteen-month delay. The delay in the present case has not been unreasonable given the complexity of the estate, the complications in respect to claims asserted against the property, and the possibility of a viable reorganization plan, as well as the fact that some of the delay may have been of the bank's own making.

We conclude that the authorization of the sale contract by the trial judge was not an abuse of discretion, given the support in the record for the necessary findings that the trustee had an equity in the property and that the sale is equitable for all concerned. Accordingly we affirm.

Judgment affirmed.